UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD OLIVIER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2773** |
| **N. BURL CAIN, WARDEN** | **SECTION "G"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **GRANTED**, petitioner's sentence to life in prison without benefit of parole be **VACATED**, and the Orleans Parish Criminal District Court be **ORDERED** either to resentence petitioner or otherwise bring his sentence into conformity with Miller v. Alabama, __ U.S. __, 132 S. Ct. 2455 (2012), or release him from confinement, within ninety (90) days of issuance of this court's order.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Ronald Olivier, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On February 20, 1992, Olivier and a co-defendant, Felix Lewis, were indicted by a grand jury in Orleans Parish and charged with first degree murder.[3] The Louisiana Fourth Circuit Court of Appeal summarized the facts determined at trial in relevant part as follows:

> Connie Lee, mother of Gerard Lee, Jr., testified that on Christmas night 1991 he went to Canal Street to meet his cousin. Once there, he called her to tell her he had arrived. Five minutes later, she received a call from a resident of the area saying he had been shot. She said she had never seen her son carry a weapon.
> Orlanda Marie Smith, Gerard Lee Jr.'s cousin, testified she knew the defendant. On the night of the crime, she and a friend, Robin Jones, went to a game room where they met Christopher Armstrong, Robert Taylor, Donald Crockett, Lee, Lewis, and the defendant. Lee, Lewis, and the defendant left. She and the others met at a nearby Popeye's restaurant. There she saw Lee again. She was standing very near him when she saw the defendant and Lewis standing in the doorway of a passing city bus. She then heard a gunshot, turned and saw the defendant with a gun in his hand. A bullet ricocheted and hit her leg. She ran, but realized that Lee and Donald Crockett had been shot. She later identified the defendant in a photographic lineup.
> Dr. Paul McGarry, forensic pathologist for the Orleans Parish Coroner's Office, said that Lee suffered two gunshots: one to th leg, and another fatal one to the chest.
> Robin Jones testified she and Smith went to the game room where Smith introduced her to the defendant and Lewis. They went to Popeye's. There, she saw the defendant argue with Lee. She saw the defendant and Lewis get onto the bus, and she saw the defendant pull a gun, point it at Lee, and begin firing it. She though the defendant fired five or six shots. She saw that Lee and Crockett had been shot. A bullet ricocheted and hit her in the leg. She identified the defendant in a photographic line-up.

---

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 4 of 10, Indictment, 2/20/92.

2

>        Paul Gatlin said he was the defendant and Lewis on the night of the crime. He boarded the bus with them and then heard gunshots. He did not se the defendant fire the gun, but he did see him holding it.
>        Rasheed Abdul Mumin, the bus driver, said he stopped at the corner of Rampart and Canal Streets between 10:10 and 10:15 p.m. A crowd disembarked and another crowd embarked. He heard some gunshots, looked up and saw a man holding a gun seated in the last seat of the bus. He heard the remark: "He ain't had no business putting his hand in his pocket." He described the man holding the gun as light skinned and wearing a black sweater with a hood. After the shooting, he continued on his route. The man who had been holding the gun exited the bus at Elysian Fields and St. Claude Avenues.
>        Donald Crockett said he saw Smith, Jones, Armstrong, Taylor and Lee at the game room. The defendant and Lewis were there with another man. He heard Lee argue with the defendant and Lewis. The entire group went to Popeye's. A bus pulled up. he saw the defendant pull the trigger on a gun he was carrying. He was shot several times. Lee then told him that he had been shot in the chest and that he was going to die. Crockett later identified the defendant in a photographic line-up. He said he also saw Lewis with a gun, bit that he had not been carrying one.

State v. Olivier, 646 So. 2d 1262 (La. App. 4th Cir. 1994) (Table); State Record Volume 4 of 10, Louisiana Fourth Circuit Court of Appeal Opinion, 93-KA-2303, pages 2-4, November 17, 1994.

Olivier's co-defendant, Lewis, pled guilty to manslaughter on February 16, 1993, and received a five year prison sentence.[4] Olivier was tried before a jury on February 9 and 10, 1993, and found guilty of the responsive verdict of second degree murder.[5] The state trial court sentenced Olivier on April 12, 1993, to life in prison without benefit of

---

[4]St. Rec. Vol. 4 of 10, Waiver of Constitutional Rights Plea of Guilty (Felix Lewis), 2/16/93.

[5]St. Rec. Vol. 4 of 10, Trial Minutes, 2/10/93; Jury Verdict, dated 2/11/93; Trial Transcript, 2/9-10/93.

3

parole, probation, or suspension of sentence.[6] Olivier's conviction and sentence were affirmed on direct appeal by the Louisiana Fourth Circuit on November 17, 1994.[7] He sought no review of this ruling.

The State concedes that Olivier was sixteen (16) years old when this crime was committed.[8]

On February 27, 2013, after unsuccessful attempts to obtain post-conviction relief, unrelated to the claims in the instant federal habeas corpus petition,[9] Olivier's counsel filed a motion with the state trial court seeking to correct his sentence based on the United States Supreme Court's then-recent opinion in Miller v. Alabama, __ U.S. __, 132 S. Ct. 2455 (2012). The Miller Court clearly held that it is unconstitutional to impose a

---

[6] St. Rec. Vol. 4 of 10, Sentencing of the Court, 4/12/93.

[7] Olivier, 646 So. 2d at 1262; St. Rec. Vol. 4 of 10, 4th Cir. Opinion, 93-KA-2303, 11/17/94.

[8] Rec. Doc. No. 29, p. 1 (State's Supplemental Response). The state trial court record contains no official reference to Olivier's age that I could find.

[9] See, State ex rel. Olivier v. State, 793 So.2d 1237 (La. 2001), cert. denied, 534 U.S. 1085 (2002); State ex rel. Olivier v. State, 916 So.2d 1041 (La 2005); St. Rec. Vol. 5 of 10, Application for Post-Conviction Relief, 1997; Trial Court Judgment, 4/13/00; 4th Cir. Order, 2000-K-1168, 7/10/00; La. S. Ct. Writ Application, 00-KH-2605, 9/8/00; La. S. Ct. Order, 2000-KH-2605, 6/15/01; Application for Post-Conviction Relief (dated 4/30/04); Trial Court Judgment, 6/30/04; Minute Entry, 7/4/04; 4th Cir. Writ Application, 2004-K-1647, 9/22/04 (dated 9/10/04); 4th Cir. Order, 2004-K-1647, 11/17/04; La. S. Ct. Writ Application, 05-KH-63, 1/7/05 (dated 12/16/04); La. S. Ct. Order, 2005-KH-0063, 12/9/05.

4

life sentence without benefit of parole upon a juvenile.[10]  On April 17, 2013, the state trial court granted the motion, finding Miller retroactively applicable.[11]

The Louisiana Fourth Circuit denied the State's request for a stay and its writ application, citing Miller as controlling law.[12]  The State filed a writ application with the Louisiana Supreme Court and the state supreme court stayed the proceedings pending review of the retroactivity of Miller in another case.[13]  The state trial court also stayed Olivier's re-sentencing in accordance with that order.[14]

On June 20, 2014, the Louisiana Supreme Court granted the State's writ application and reversed the grant of Olivier's motion to correct the sentence based on its ruling in State v. Tate, 130 So.2d 829 (La. 2013), cert. denied, __ U.S. __, 134 S. Ct. 2663 (2014), that Miller did not retroactively apply on collateral review.[15]

At a November 25, 2013, hearing, the state trial court formally denied Olivier's motion to correct the sentence pursuant to the Louisiana Supreme Court's decision and

---

[10]St. Rec. Vol. 2 of 10, Motion to Correct Illegal Sentence, 2/27/13.

[11]St. Rec. Vol. 10 of 10, Hearing Transcript, 4/17/13.

[12]St. Rec. Vol. 1 of 10, 4th Cir. Order, 2013-K-0630, 5/15/13; State's 4th Cir. Writ Application, 2013-K-0630, dated 5/8/13.

[13]St. Rec. Vol. 1 of 10, La. S. Ct. Letter, 2013-KK-1110, 5/17/13; State's Louisiana Supreme Court Writ Application, 13-KK-1110, 5/15/13.

[14]St. Rec. Vol. 10 of 10, Sentencing Hearing Transcript, 7/18/13.

[15]State v. Olivier, 141 So.3d 266, 267 (La. 2014); St. Rec. Vol. 7 of 10, La. S. Ct. Order, 2013-KK-1110, 6/20/14.

issued its judgment with reasons.[16] The Louisiana Fourth Circuit converted Olivier's appeal to a writ application and denied the writ application based on the Louisiana Supreme Court Tate decision, noting that the United States Supreme Court had granted Tate's petition for a writ of certiorari in Tate v. Louisiana, __ U.S. __, 134 S. Ct. 2663 (2014).[17] Olivier did not seek review of this ruling.[18]

## II. FEDERAL HABEAS PETITION

On January 2, 2015, the clerk of this court filed Olivier's federal habeas corpus petition in which he asserts that the state court's refusal to apply Miller retroactively violated the Eighth Amendment because Miller pronounced a new substantive rule of law which is retroactively applicable on collateral review and which renders unconstitutional his life sentence without benefit of parole.[19]

In its initial answer in opposition to Olivier's petition, the State asserted that the petition was not timely filed because Miller was not a new, retroactive rule of law triggering an extended time period for Olivier to seek federal habeas relief under 28

---

[16]St. Rec. Vol. 1 of 10, Trial Court Judgment, 11/25/13; Minute Entry, 11/25/13; St. Rec. Vol. 10 of 10, Hearing Transcript, 11/25/13.

[17]State v. Olivier, 150 So.3d 41 (La. App. 4th Cir. 2014).

[18]A member of my staff contacted the clerk's office for the Louisiana Supreme Court and confirmed that Olivier did not seek review of the Louisiana Fourth Circuit's ruling.

[19]Rec. Doc. No. 3, pp. 5, 22, 24-30. Olivier also references the companion case of Jackson v. Hobbs, __ U.S. __, 132 S. Ct. 548 (2011), which was subsumed into the Miller opinion.

U.S.C. § 2244 for his 1993 conviction.[20]  I stayed the case following the United States Supreme Court's grant of certiorari in Montgomery v. Louisiana, __ U.S. __, 135 S. Ct. 1546 (2015).[21]  In Miller, the Supreme Court eventually held that Miller was a new rule of law, retroactively applicable to Louisiana convictions on collateral review. Montgomery v. Louisiana, __ U.S. __, 136 S. Ct. 718, 736 (2016).

After the stay was lifted, the State filed a supplemental memorandum in opposition to Olivier's petition withdrawing its limitations defense and asserting instead that Olivier was required to exhaust available state court remedies to allow the state courts the first opportunity to reconsider his sentence in light of Montgomery.[22]  The State later filed a notice that the Louisiana legislature had failed to pass proposed bills to cure the Miller issues in Louisiana.[23]  As a result, the State asserted, local prosecutors would be pursuing resentencing in each of the known cases in which sentences did not comply with Miller, which would render Olivier's petition moot.

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[20]Rec. Doc. No. 15.

[21]Rec. Doc. No. 26.

[22]Rec. Doc. Nos. 28, 29, 32.

[23]Rec. Doc. No. 33.

7

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[24] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Olivier's petition, which, for reasons discussed below, is deemed filed in federal court on December 5, 2014.[25] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State has conceded timeliness of the petition after Montgomery and has not argued procedural default. The State asserts, however, that Olivier has not exhausted available state court remedies because he has not given Louisiana courts the first opportunity to review his claim in light of the Montgomery holding that Miller is

---

[24] The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[25] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The official stamp from the prison's Legal Programs Department reflects that Olivier delivered the petition to prison officials on December 5, 2014, the same day the documents were emailed to the clerk of court for filing. Rec. Doc. Nos. 1, p. 16. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

8

retroactively applicable, citing Gomez v. Dretke, 422 F.3d 246, 266 (5th Cir. 2005) (citing Picard v. Conner, 404 U.S. 270, 276 (1971)); 17B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 4264.4 (3d ed. 2007) (citing Picard, 404 U.S. at 277); Spiller v. MacLaren, No. 16-11269, 2016 WL 1583840, at *2 (E.D. Mich. Apr. 20, 2016). For the following reasons, I recommend that relief should be granted to Olivier under Miller and Montgomery.

IV.   EXCEPTION TO THE EXHAUSTION DOCTRINE PERMITTING RELIEF

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). It is not enough for a petitioner to assert the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. See Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition

9

or brief, such as a lower court opinion, to find the claim). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan, 533 U.S. at 167. "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." Id. (citing Nobles, 127 F.3d at 420).

Assertion of an exhaustion defense pursuant to the doctrine discussed in Gomez and other cases cited above has been rejected by this court in similar Miller cases after the Montgomery opinion. See Williams v. Cain, No. 15-404, 2016 WL 3877973, at *4 (E.D. La. Jul. 18, 2016) (finding Gomez distinguishable because the petitioner there requested a stay of his federal proceedings to allow for exhaustion and Williams had already exhausted); Gillam v. Cain, No. 14-2129, 2016 WL 3060254, at *4 (E.D. La. May 31, 2016) (same). In those cases, the petitioners were found to have completed exhaustion of the Miller issue through the state courts before their federal petition was filed and before Montgomery. Recognizing the absolute entitlement to relief available under Miller, this court in Williams and Gillam rejected the State's exhaustion defense

because the state courts already had the first full opportunity to provide relief under Miller. Williams, 2016 WL 3877973, at *5 ("The Court further finds that equity and judicial economy support granting the petition. Requiring Petitioner to return to state court to reassert the same arguments he previously made would create an unnecessary procedural obstacle."); Gillam, 2016 WL 3060354, at *6 (same).

In Olivier's case, the record indicates that Olivier did not complete exhaustion through the Louisiana Supreme Court following denial of his motion to correct his sentence and the related writ application in the Louisiana Fourth Circuit. Thus, unlike the petitioner's in Williams and Gillam, Olivier did not give the Louisiana Supreme Curt the opportunity to review his Miller arguments or the denial of his motion to reconsider the sentence. See Spiller, 2016 WL 1583840, at *2 (declining to grant relief where the petitioner did not present his Miller claims to the state courts). However, the Louisiana Supreme Court's erroneous view of Miller retroactively had already been made clear with the grant of the State's writ application reversing the lower court's grant of Olivier's motion to correct.

Olivier undoubtedly is entitled under Miller and Montgomery to relief from his life sentence without benefit of parole imposed upon him for a crime committed while he was a juvenile. The AEDPA generally prohibits the grant of relief on an unexhausted claim, except under certain limited circumstances. Cullen v. Pinholster, 563 U.S. 170, 181 (2011) ("Sections 2254(b) and (c) provide that a federal court may not grant such

11

applications unless, with certain exceptions, the applicant has exhausted state remedies."). 28 U.S.C. § 2254(b)(1) provides as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted <u>unless</u> it <u>appears that</u>--
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or
> (ii) <u>circumstances exist that render such process ineffective to protect the rights of the applicant</u>.

(Emphasis added).

Olivier's case presents such circumstances, because the available state processes have demonstrated themselves ineffective in expeditiously protecting his now clearly established rights.

The United States Fifth Circuit has held that exhaustion may only be bypassed under this rule in "'rare cases where exceptional circumstances of peculiar urgency' mandate federal court interference." <u>Taylor v. Stephens</u>, 577 F. App'x 285, 286 (5th Cir. 2014) (quoting <u>Deters v. Collins</u>, 985 F.2d 789, 795 (5th Cir. 1993) (quoting <u>Ex parte Hawk</u>, 321 U.S. 114, 117 (1944)). The Fifth Circuit recognized that one such circumstance exists when "the state system inordinately and unjustifiably <u>delays</u> review of a petitioner's claims so as to impinge upon his due process rights." <u>Id</u>., at 286-87 (quoting <u>Deters</u>, 985 F.2d at 795) (emphasis added).

The record reflects that the state trial court recognized in 2013 that Olivier was entitled to resentencing under <u>Miller</u>. It took almost three years for the correctness of the

state trial court's initial ruling ultimately to be vindicated by the United States Supreme Court in Montgomery on January 25, 2016.

Since that date, Louisiana prosecutors and courts have done nothing to move Olivier any closer to a constitutionally valid sentence. In this federal habeas case, the State has continued to oppose the grant of relief, offering alternative grounds for dismissal, including failure to exhaust and mootness based on legislation that has never come to fruition. Although the State has indicated its intent to file a motion for the state trial court to reconsider Olivier's sentence, there is no indication that any such motion has ever been filed.

Instead, the records of the Orleans Parish Criminal District Court reflect that Olivier, not the State, filed a pro se motion to reconsider his sentence on April 4, 2016, and counsel was appointed.[26] The final entry of that court's docket master reflects that Olivier's motion was stayed on April 28, 2016, pending the passage of legislation in response to Montgomery. As the State has conceded to this court, that legislative effort failed months ago.[27]

The state court's record does not reflect any effort to move Olivier's case forward since April 2016. I therefore find that the circumstances of Olivier's case and the unnecessary and inordinate delays in granting him the relief that he is due establish that

---

[26] A copy of the docket master from the Orleans Parish Criminal District Court as of August 12, 2016, has been separately filed into the record.

[27] Rec. Doc. No. 33.

13

the state court's available processes are ineffective to protect his rights expeditiously and without further undue delay. I also conclude that since Montgomery, "the inordinate delay is wholly and completely the fault of the state," Deters, 985 F.2d at 796, and Olivier need not pursue further exhaustion.

The record reflects that Olivier was sixteen (16) years old at the time he committed the second degree murder for which he was sentenced to life in prison without benefit of parole, probation or suspension of sentence. Miller and Montgomery clearly hold his life sentence without benefit of parole is unconstitutional, and he is entitled to federal habeas corpus relief.

This federal district court has broad discretion to determine the relief that will promote and foster comity between the state and federal courts. See Hilton v. Braunskill, 481 U.S. 770, 775 (1987) (Section 2243 vests the district courts with "broad discretion in conditioning a judgment granting habeas relief.") The federal courts, however, are limited to the conditional use of the writ of habeas corpus to require the state courts to meet constitutional standards before mandating release. Smith v. Lucas, 9 F.3d 359, 366-67 (5th Cir. 1993). The conditional grant of the writ enhances the "AEDPA's goal of promoting comity, finality and federalism by giving state courts the first opportunity to review [the] claim and to correct any constitutional violation in the first instance," Jimenez v. Quarterman, 555 U.S. 113, 121 (2009) (quoting Carey v. Saffold, 536 U.S. 214, 220 (2002)).

In this case, the State should be allowed "an opportunity to correct the constitutional violation found by the [federal] court" in its own courts. See Hilton v. Braunskill, 481 U.S. 770, 775 (1987). The Supreme Court itself made clear that the states have options in correcting Miller violations, including by offering parole eligibility rather than resentencing. Montgomery, 136 S. Ct. at 736. Thus, I find that Olivier's sentence is unconstitutional under Miller and that the state courts, in the first instance, should determine the appropriate sentence or remedy to correct that violation in compliance with Miller.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Olivier's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **GRANTED**, his sentence to life in prison without benefit of parole be **VACATED**, and the Orleans Parish Criminal District Court be **ORDERED**, within ninety (90) days of issuance of the district court's order, to either (a) resentence Olivier or otherwise bring his sentence into conformity with Miller v. Alabama, __ U.S. __, 132 S. Ct. 2455 (2012), or (b) release him from confinement.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[28]

    New Orleans, Louisiana, this ____15th____ day of August, 2016.

                                         JOSEPH C. WILKINSON, JR.
                                     UNITED STATES MAGISTRATE JUDGE

---

[28]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.